```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

BRADLEY TILFORD,                §
                                §
        Plaintiff,               §
                                §
v.                              §   CIVIL ACTION NO. H-05-2989
                                §
MICHAEL JONES P/K/A MIKE JONES, §
WHO IS MIKE JONES MUSIC,        §
MICHAEL K. WATTS P/K/A MICHAEL  §
"5000" WATTS, SWISHA BLAST      §
ENTERTAINMENT, L.L.C., 2 PLAYAS §
PUBLISHING L.L.C., WARNER BROS. §
RECORDS, INC., STAVYE THOMAS    §
P/K/A "SLIM THUG," SLIM THUG    §
PUBLISHING, SALIH WILLIAMS,     §
PAUL MICHAEL SLAYTON P/K/A      §
"PAUL WALL," EMI BLACKWOOD      §
MUSIC, INC., and BROADCAST      §
MUSIC, INC. A/K/A "BMI,"        §
                                §
        Defendants.              §
```

MEMORANDUM AND ORDER

Pending is Defendant EMI Blackwood Music, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and/or Motion for More Definite Statements under Rule 12(e) (Document No. 19). After having carefully considered the motion, response, and the applicable law, the Court concludes as follows.

I. Background

Plaintiff Bradley Tilford ("Plaintiff"), who alleges to be the assignee of a copyright interest to the musical creation "Still Tipping," brings this action for a declaratory judgment pursuant to

28 U.S.C. § 2201.[1]  Plaintiff alleges that in 2002, Randy Jefferson ("Jefferson"), through his company Evolved Sound Corporation ("Evolved"), entered into an agreement with Defendant Swisha Blast Entertainment L.L.C. ("Swisha") to record and produce Masters for an album entitled, "The Day Hell Broke Loose."  *See* Document No. 5 ¶ 18.  The agreement provided for joint ownership between Evolved and Swisha of all "right, title and interest, including the copyright," in the Masters, the Album, and the Packaging.  Id. Jefferson wrote and produced the musical track, and organized the hook and structure, of the song "Still Tipping" ("Song I").  Three vocalists--including Defendants Stavye Thomas p/k/a "Slim Thug" and Michael Jones p/k/a "Mike Jones"--wrote and performed original lyrics for Song I.  Id.  Plaintiff alleges that "[t]hey all understood that they were working together to create a song," and that Evolved and Swisha "were to share the revenues generated from the album on a fifty-fifty basis."  Id.  In 2003, after the album was substantially completed but before it was released, Swisha sent a letter to Evolved that terminated the agreement.  Jefferson then,

---

[1] Plaintiff's Original Complaint was framed in terms of copyright infringement, but Plaintiff amended his complaint to remove the infringement claim, and he alleges no facts to support such a claim against Defendant EMI Blackwood Music Inc. ("EMI") in his First Amended Complaint.  EMI's motion to dismiss the original copyright infringement claim is therefore denied as moot.

2

"for valuable consideration," assigned his interest in Song I to Plaintiff by written assignment.  Id. ¶¶ 17-18.[2]

In 2004, Swisha made and released a new version of Song I ("Song II"), and Swisha "attempted to distinguish" Song II by mixing in new background music material, replacing some aspects of Song I, and slowing the tempo down by approximately one-half step. Id. ¶ 19.  Plaintiff alleges that Swisha, "in clear, knowing and intentional disregard" of Plaintiff's rights, distributed Song II to the public, "without notice . . . without credit . . . and without any accounting to Jefferson nor Plaintiff."  Id.  Plaintiff alleges that Song II, "with its infectious hook 'Still Tippin' crafted by 'Jefferson,'" was a "huge success."  Plaintiff alleges that "[t]he album credits did not mention Jefferson nor did it mention the fact that it was a derivative of the Jefferson work." Id.  Plaintiff sent a cease and desist request, but Defendants "collectively continued to manufacture, market, distribute, and perform copies of the album containing the subject composition," without accounting to or compensating Plaintiff.  Id.  With this action, Plaintiff seeks a declaration that he is an "owner of an undivided one half interest in [Song I and Song II] within the meaning of 17 U.S.C. § 201(a)"; (2) an accounting of "all amounts received as a result of the exploitation of the Works"; (3) his

---

[2] Plaintiff obtained Copyright Registration for Song I in 2005.  Document No. 5 ¶ 17.

share of profits; (4) injunctive relief; (5) damages, including (a) damages for "loss of goodwill, stature and reputation," and (b) damages caused by Defendants' "unfair trade practices, misappropriation and unfair competition"; and (6) attorney's fees, costs, and pre- and post-judgment interest.

EMI now moves to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that (1) Plaintiff fails to state a cause of action for ownership of Song II, which is a newly-created derivative work; (2) Plaintiff's state law claims are preempted by the Federal Copyright Act; (3) Plaintiff's request for damages for "loss of goodwill, stature and reputation" is "nothing more than a claim for attribution," which is not a cognizable cause of action under the Copyright Act or common law; and (4) Plaintiff fails to plead sufficiently the criteria to obtain injunctive relief.  (Plaintiff withdrew his motion for preliminary injunction by a notice filed at Document No. 9.)  EMI alternatively moves that Plaintiff be required to file a more definite statement.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any

evidence either by affidavit or admission, its task is inevitably a limited one. Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. La Porte Construction Co. v. Bayshore Nat'l Bank of La Porte, Tex., 805 F.2d 1254, 1255 (5th Cir. 1986); Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied* 103 S. Ct. 729 (1983); Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977). Dismissal of a claim is improper unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Hughes v. Rowe, 101 S. Ct. 173, 176 (1980); Conley v. Gibson, 78 S. Ct. 99, 102 (1957); Kaiser Aluminum, 677 F.2d at 1050; Mann, 556 F.2d at 293.

### III.  Discussion

A.  Declaration of Co-Ownership in Song II

Plaintiff requests a declaration that he is a co-owner of Song II "within the meaning of 17 U.S.C. § 201(a)." See 17 U.S.C. § 201(a) ("Copyright in a work . . . vests initially in the author

5

or authors of the work. The authors of a joint work are co-owners of copyright in the work."). EMI moves to dismiss this request, arguing that (1) Plaintiff's prior interest in Song I is insufficient to make him a co-owner of Song II, which is a newly-created derivative work, and (2) Plaintiff does not allege, as he must, that he or Jefferson actually collaborated in the creation of Song II. A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The authors of a joint work are co-owners of the copyright in that work. 17 U.S.C. § 201(a). "[O]ne cannot be deemed to be a joint author without actually collaborating in the work's preparation." Weissmann v. Freeman, 868 F.2d 1313, 1318 (2d Cir. 1989). As such, joint ownership in a prior work is insufficient to make one a joint author of a derivative work. *See* id. at 1317 (noting that "[i]f such were the law, it would eviscerate the independent copyright protection that attaches to a derivative work that is wholly independent of the protection afforded the preexisting work."). *See also* Davis v. Blige, 419 F. Supp. 2d 493, 501 (S.D.N.Y. 2005) ("A non-participating co-owner acquires no property rights in a newly created derivative work."); Ashton-Tate Corp. v. Ross, 916 F.2d 516, 522 (9th Cir. 1990) (although "an author of a joint work does not acquire an authorship interest in derivative works that utilize part of the joint work," the author

6

"may be entitled to compensation for the use of the original joint work.").

Here, Plaintiff alleges that Swisha "caused [Song II] to be made," and "attempted to distinguish [Song II] by mixing in new background music material, replacing some of that from the Jefferson recording, and slowed the tempo down by approximately one half step."  *See* Document No. 5 ¶ 19.  Plaintiff further alleges that "[d]uring the year 2005, Warner/Asylum and Swisha released the debut album on [sic] the artist Mike Jones entitled 'Who Is Mike Jones.' . . . The album credits did not mention Jefferson nor did it mention the fact that it was a *derivative* of the Jefferson work."  Id. ¶ 20 (emphasis added).  In sum, although Plaintiff alleges that Song II is a derivative work, he does *not* allege that either he or Jefferson collaborated in Song II's creation, which is required to make him a joint author and co-owner of Song II "within the meaning of 17 U.S.C. § 201(a)."  *Cf.* Davis, 419 F. Supp. 2d at 501 (dismissing plaintiff's claim for declaration of ownership in newly-created derivative works because plaintiff, as a non-participating co-owner, "cannot obtain a property interest in the derivative works solely on the basis of her co-ownership of the [pre-existing works].").  As such, EMI's motion to dismiss Plaintiff's request for a declaratory judgment that he is an "owner of an undivided one half interest in [Song II] within the meaning

7

of 17 U.S.C. § 201(a)" will be granted, and this claim against EMI will be dismissed.

B.   Preemption of State Law Claims

Plaintiff in the prayer to his complaint seeks damages for "unfair trade practices, misappropriation and unfair competition." *See* Document No. 5 at 11.  EMI argues that these state law claims are preempted by the Federal Copyright Act and must be dismissed. The Copyright Act generally preempts state law claims that are equivalent to any of the exclusive rights created by the copyright law.  *See* 17 U.S.C. § 301(a).  In determining whether a state law claim is preempted by federal copyright law, the court applies a two-part test.  *See* Daboub v. Gibbons, 42 F.3d 285, 289 (5th Cir. 1995).  First, the Court examines whether the claim falls within the subject matter of copyright as defined by 17 U.S.C. § 102.  *See* id.  A musical composition is amenable to copyright protection. *See* 17 U.S.C. § 102(a)(2) (listing "musical works, including any accompanying words," as a category of "original works of authorship" protected by copyright).  Next, the cause of action is examined "to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106," which gives copyright owners the exclusive right to authorize reproduction, adaptation, publication, performance, and display of their copyrighted works.  Id. *See also*

Keane v. Fox Television Stations, Inc., 297 F. Supp. 2d 921, 944 (S.D. Tex. 2004) (Lake, J.).  "The second condition requires a comparison of the nature of the rights protected under federal copyright law with the nature of the state rights for which the plaintiff seeks protection."  Sefton v. Jew, 201 F. Supp. 2d 730, 746 (W.D. Tex. 2001).  If the defendant's alleged acts would violate both state law and federal copyright law, then the state right is deemed "equivalent to copyright."  Id. (quoting Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 785 (5th Cir. 1999)).  However, if the plaintiff has alleged facts corresponding to an "extra element," such as a breach of fiduciary duty, that would render his claims "different in kind from a copyright infringement claim," then his state law claims are not preempted.  *See* id.; Keane, 297 F. Supp. 2d at 945.

  The gravamen of Plaintiff's complaint is that Defendants have wrongfully "continued to manufacture, market, and distribute and perform copies of the album containing [Song II]," without "account[ing] to and compensat[ing]" Plaintiff.  *See* Document No. 5 ¶ 20.  Plaintiff does not separately plead any state law claims, and he provides no additional facts to support a prayer for relief on such.  Plaintiff himself initially framed his allegations in terms of copyright infringement, but he amended his complaint to remove the copyright infringement claim and add the declaratory judgment claims--without changing the same set of operative facts.

9

Although Plaintiff has attempted to recharacterize his complaint, the core of his complaint is the same: the wrongful reproduction, distribution, and reproduction of his musical composition without accounting to him for the proceeds of the sales. There are no separately pled state law claims to support a prayer for damages on distinguishable state law claims. *Cf.* Daboub, 42 F.3d at 289 (finding preemption where "[t]he core of each . . . state law theories of recovery . . . is the same: the wrongful copying, distribution, and performance" of musical lyrics); Sefton, 201 F. Supp. 2d at 746 (state law conversion claim preempted where plaintiff's complaint alleged "only one set of operative facts," and plaintiff alleged no "conduct by Defendants to support his conversion claim that is qualitatively different from the conduct alleged to support his copyright infringement claim."); Keane, 297 F. Supp. 2d at 945 (state law claims--including unfair competition and misappropriation claims--preempted where "[t]he core of each of [Plaintiff]'s state law claims is identical: the wrongful copying of an idea for a talent show"). In sum, Plaintiff has alleged no conduct by EMI separately to support a recovery of damages based on state law unfair competition, misappropriation, and unfair trade practices claims that would be "different in kind" from the wrongful use of his copyrighted song without accounting to him for the sales proceeds. The prayer for recovery from EMI on these

state law theories will therefore be dismissed on grounds of preemption.

C.   Damages for Loss of Goodwill, Stature, and Reputation

Plaintiff also prays for damages for the "loss of goodwill, stature and reputation which accrues to the writer of a successful composition."  EMI moves to dismiss this request, arguing that it is "nothing more than a claim for attribution," which is not a cognizable cause of action under the Copyright Act or common law.  An attribution right is defined as "[a] person's right to be credited as a work's author, to have one's name appear in connection with a work, or to forbid the use of one's name in connection with a work that the person did not create."  BLACK'S LAW DICTIONARY (8th ed. 2004).  The right of attribution is not an exclusive right protected under the Copyright Act.  *See* UMG Recordings, Inc. v. Disco Azteca Distribs., Inc., No. CIV. S-04-2611 FCD DAD, 2006 WL 2354791, at *11 (E.D. Cal. Aug. 14, 2006) (noting that the "right to be credited" is not an exclusive right protected by 17 U.S.C. § 106).  *See also* Suid v. Newsweek Magazine, 503 F. Supp. 146, 149 (D.C.D.C. 1980) ("[T]his court has been unable to locate any case recognizing a common-law action for failure to attribute or misappropriation without attribution."). Though the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A, creates a right of attribution, the right is available only to

11

"author[s] of a work of visual art." <u>Id.</u> *See also* <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 123 S. Ct. 2041, 2048 (2003) (finding that the "express right of attribution is carefully limited and focused: It attaches only to specified 'work[s] of visual art,' is personal to the artist, and endures only for 'the life of the author'") (internal citations omitted); <u>Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.</u>, 292 F. Supp. 2d 535, 554 (S.D.N.Y. 2003) (finding that plaintiff's attribution claim failed as a matter of law where the images allegedly copied were not "work[s] of visual art" under VARA). As EMI argues, Plaintiff does not allege a copyright on visual works, and VARA is inapplicable to Plaintiff. As such, because Plaintiff has no basis for asserting a claim of attribution, this claim against EMI will be dismissed.

## IV. <u>Order</u>

For the reasons set forth, it is

ORDERED that Defendant EMI Blackwood Music, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and/or Motion for More Definite Statements under Rule 12(e) (Document No. 19) is GRANTED in PART as follows: Plaintiff Bradley Tilford's copyright infringement claim against EMI Blackwood Music, Inc. is DENIED as moot in light of Plaintiff's First Amended Complaint; Plaintiff's request that he be declared an owner of an undivided one-half interest in Song II, which he describes as a derivative of Song I,

but without any allegation that Plaintiff or Jefferson collaborated in Song II's creation, is DISMISSED as against EMI Blackwood Music, Inc.; and Plaintiff's prayer for damages against EMI Blackwood Music, Inc. based on state law unfair competition, misappropriation, and unfair trade practices claims, and for "loss of goodwill, stature and reputation which accrues to the writer of a successful composition," are all DISMISSED. Defendant EMI's motion is otherwise DENIED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 11th day of September, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE